# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| LEILA TYRINA THOMPSON,  )<br>    Plaintiff,  )<br> )<br>    v.  )<br> )<br>NANCY A. BERRYHILL,  )<br>Deputy Commissioner for Operations,  )<br>Social Security Administration,  )<br>    Defendant.  ) | CAUSE NO.: 2:18-CV-63-JEM |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Leila Tyrina Thompson on February 13, 2018, and Plaintiff's Memorandum in Support of Reversing the Decision of the Commissioner of Social Security [DE 15], filed on June 8, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On August 16, 2018, the Commissioner filed a response, and Plaintiff filed a reply on September 6, 2018.

**I.     Background**

On August 16, 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she became disabled on February 25, 2014. Plaintiff's applications were denied initially and upon reconsideration. On October 14, 2016, Administrative Law Judge ("ALJ") Kathleen Kadlec held a hearing at which Plaintiff, with an attorney representative, and a vocational expert ("VE") testified. On March 7, 2017, the ALJ issued a decision finding that Plaintiff was not disabled, and Plaintiff appealed the decision.

The ALJ made the following findings under the required five-step analysis:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since February 25, 2014, the alleged onset date.

3. The claimant has the following severe impairments: multiple sclerosis and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity ("RFC") to perform sedentary work except frequently reach overhead bilaterally; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, and crawl; never work at unprotected heights; never be exposed to moving mechanical parts; never operate a motor vehicle; never be exposed to dust, odors, fumes, or pulmonary irritants; never work in extreme heat; and be limited to moderate noise levels.

6. The claimant is capable of performing past relevant work as a telephone solicitor and receptionist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 25, 2014, through the date of the decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by

substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55

3

F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.  Analysis

In this appeal, Plaintiff argues that the ALJ failed to properly assess Plaintiff's MS-related fatigue, to properly weigh the opinion of treating neurologist Dr. Vyas, and to properly assess Plaintiff's subjective symptoms. The Court considers each argument in turn.

### A.  Fatigue

Plaintiff contends that the primary reason she can no longer work is significant fatigue from her multiple sclerosis (MS), which requires her to take multiple naps throughout the day. *See* AR 50, 53, 62. Although the ALJ acknowledged Plaintiff's fatigue, the ALJ found that the fatigue was accommodated by restricting Plaintiff to sedentary work with reaching, postural, and environmental limitations. AR 27. Plaintiff argues that the ALJ's cursory analysis constitutes reversible error for two reasons.

First, Plaintiff argues that the ALJ provided no explanation as to how Plaintiff's fatigue is accommodated by sedentary work with reaching, postural, and sedentary limitations. *See Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016) (finding reversible error when the ALJ

4

limited the claimant to simple work at a work station to accommodate fatigue from hypersomnia without explaining why that environment would be "less fatiguing" than other environments). Plaintiff repeatedly and consistently reported fatigue to her treating physicians and to consultative examiners. *See* AR 626 (10/10/2014), 759 (2/28/2015), 806-08 (11/25/2015), 813 (4/15/2016), 846-850 (7/7/2016), 855 (6/8/2016), 865 (3/21/2016), 872 (3/11/2016), 880 (2/12/2016), 888 (11/3/2015), 900 (11/5/2015), 906 (8/12/2015). And, she testified at the hearing that she is "constantly fatigued. I have to take sometimes two to three naps a day." AR 50. Plaintiff testified that she has talked to her doctor about her fatigue and that her doctor had recently changed her medication. AR 53-54. And, she testified that she naps daily. AR 62.

In completing a Multiple Sclerosis Residual Functional Capacity Questionnaire on November 25, 2015, Plaintiff's treating neurologist, Dr. Daksha Vyas, opined that Plaintiff's pain, fatigue, or other symptoms are frequently severe enough to interfere with attention and concentration. AR 808. Dr. Vyas also responded that Plaintiff's fatigue is *not* "best described as lassitude rather than fatigue of motor function." AR 807. As set forth in the next section, the Court finds that the ALJ erred in giving "little weight" to Dr. Vyas' opinion. The uncontradicted evidence is that Plaintiff lives a restricted sedentary lifestyle yet still requires two to three naps daily. (50, 53, 62). Because the ALJ offers no explanation of how the RFC accommodates Plaintiff's fatigue, the RFC is not supported by substantial evidence. *See Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) ("The ALJ made no effort to 'build an accurate and logical bridge'. . . .").

Second, Plaintiff argues that the ALJ failed to properly assess Plaintiff's symptom of fatigue under Social Security Ruling 16-3p, once the ALJ found that Plaintiff has the severe medically

5

determinable impairment of MS that could reasonably cause her fatigue. Social Security Ruling 16-3p provides that, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). The only analysis of Plaintiff's fatigue by the ALJ was that Plaintiff's statement that she naps everyday for four to six hours "is not noted in the record" and that there are no complaints of "extreme fatigue" in the record. AR 27. This cursory comment does not recognize the longitudinal record of Plaintiff's fatigue, most of which the ALJ did not discuss.

Although the ALJ most many of Plaintiff's medical records in chronological order, she did not acknowledge the recorded symptom of fatigue when discussing the October 2014 consultative exam, *see* AR 26, AR 626; the February 2015 consultative exam, *see* AR 26, AR 759; the February 26, 2016 exam by Dr. Vyas, *see* AR 26-27, AR 880-83; the March 10, 2016 exam by Dr. Vyas, *see* AR 27, AR 872; the June 8, 2016 exam by Dr. Vyas, AR 27, AR 855; or the July 7, 2016 exam by Dr. Vyas, AR 27, AR 846-50. The ALJ did not discuss at all the November 3, 2015 treatment record of Dr. Vyas, which contained a notation of fatigue, *see* AR 888, or the March 21, 2016 treatment record of Dr. Vyas, which recorded a complaint of fatigue, *see* AR 865. The only records of fatigue mentioned by the ALJ are the August 24, 2015 examination by Dr. Vyas, *see* AR 26, AR 906; the November 16, 2015 examination by Dr. Vyas, *see* AR 26, AR 900, and the tysabri infusion treatment on April 15, 2016, *see* AR 27, AR 813. The ALJ ignored the persistence of Plaintiff's fatigue in evaluating this symptom and offered no analysis of why Plaintiff's ongoing fatigue was

6

not supported by the diagnosis of MS, which was in turn supported by objective medical records. *See* SSR 16-3p, 2016 WL 1119029, at *4, 5. As noted above, Dr. Vyas opined that Plaintiff's fatigue was not due to lassitude but rather because of "fatigue of motor function." AR 807.

The Commissioner's arguments on this issue are not persuasive. Plaintiff is not asking the Court to reweigh the evidence but rather to require the ALJ to consider all of the evidence. The ALJ did not consider Plaintiff's fatigue "in detail," as suggested by the Commissioner. The Commissioner also contends that the ALJ's RFC is supported by substantial evidence because it was more restrictive than the opinions of the consultative reviewing physicians, Dr. Brill and Dr. Eskonen in October 2014 and March 2015 respectively; however, the ALJ does not discuss those reviewing opinions in assessing Plaintiff's fatigue. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("We have made clear that what matters are the reasons articulated *by the ALJ*.").

Remand is required for the ALJ to properly assess Plaintiff's MS-related fatigue in relation to her ability to perform full time work.

**B.     Treating Opinion Evidence**

The ALJ gave "little weight" to the November 25, 2015 opinion of Plaintiff's treating neurologist, Dr. Vyas, *see* AR 806-11, 812, and gave "only some weight" to the October 14, 2014 opinion of reviewing state agency consultant Dr. Brill, *see* AR 83-88, 91-97, and to the March 20, 2015 opinion of reviewing state agency consultant Dr. Eskonen, *see* 101-10, 113-22. Plaintiff contends that the ALJ did not properly weigh Dr. Vyas' treating opinion.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with

other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

On November 26, 2015, Dr. Vyas completed a Multiple Sclerosis Residual Functional Capacity Questionnaire, *see* AR 806-11, and, on March 2, 2016, Dr. Vyas wrote a letter opining that Plaintiff "is not able to work due to her relapsing and remitting Multiple Sclerosis," AR 812. In her decision, the ALJ noted Dr. Vyas' opinion in the RFC questionnaire that Plaintiff could sit for two hours in an eight-hour day and stand/walk for two hours in an eight-hour day, could never lift more than ten pounds, could never stoop or crouch, has significant limitations in the upper extremities, and can use her hands ten percent of the day and her fingers twenty percent of the day. The ALJ also noted that Dr. Vyas opined that Plaintiff is unable to work due to MS. The ALJ then gave two reasons for giving Dr. Vyas' opinion "little weight." AR 28.

First, the ALJ commented that Dr. Vyas indicated in the RFC questionnaire that Plaintiff's exacerbations started in July 2014 but that Plaintiff did not start seeing Dr. Vyas until August 2015. This is not a sound basis for discounting Dr. Vyas' opinion given his speciality as a neurologist and that the evidence of record is consistent with Dr. Vyas' statements. The record of Plaintiff's initial

8

visit with Dr. Vyas on August 24, 2015, recognizes that Plaintiff was diagnosed with MS and had been taking Tecfidera for "a year and a few months." AR 906. Therefore, Dr. Vyas was aware of her treatment history. Moreover, the medical evidence shows that Plaintiff began to seek regular treatment for her MS in July 2014. *See* AR 379 (7/5/2014), 385 (7/10/2014), 387 (7/11/2014), 392 (7/14/2014), 434-50 (7/5/2014, 7/10/2014), 452-58 (7/11/2014), 463-68 (7/14/2014). The ALJ offered no rationale for why a treating neurologist would not be aware of the patient's medical history of the condition for which she was seeking treatment. Contrary to the Commissioner's argument about the substance of medical records from July 2014, the ALJ made no reference to the severity of Plaintiff's MS in July 2014 to discount Dr. Vyas' opinion. *See Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) ("[T]he ALJ did not rely on this rationale in his opinion, so the Commissioner cannot now rely on it.").

Second, the ALJ found that the limitations in the RFC form filled out by Dr. Vyas in November 2015 contrasted with Plaintiff's November 16, 2015 exam, which the ALJ correctly characterized as showing "full strength, normal gait, and normal sensation." AR 28 (citing Ex. 22F/59); *see* AR 900 (11/16/2015). However, the ALJ erred in relying solely on one record to discount Dr. Vyas' opinion given that Plaintiff's symptoms fluctuate. Dr. Vyas indicated that Plaintiff has relapsing and remitting MS. *See* AR 812. Earlier that year, Dr. Bayer wrote that Plaintiff "has some fluctuation in her exam from prior visits. This is consistent with the nature of her disease." AR 768. As the Seventh Circuit Court of Appeals has noted, a "snapshot of any single moment" says little about fluctuating disease. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (discussing mental illness); *see also Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("Suppose

9

that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job."); *Rios v. Colvin*, No. 14 C 2433, 2016 WL 2986972, at *7 (N.D. Ill. May 24, 2016) (finding that some records showing an ability to walk and good strength are "simply snapshots at a given period, and not necessarily inconsistent with Plaintiff's claims of fluctuating symptoms [of MS] given the evidence in this case"). Notwithstanding the normal findings in the November 16, 2015 treatment record, abnormal gait, strength, and sensory findings are documented throughout the record. *See* AR 448 (7/10/2014), 628 (10/10/2014), 735 (7/14/2014), 741-42 (1/23/2015), 748 (1/30/2015), 761 (2/28/2015), 849-51 (7/7/2016), 856-58 (6/8/2016), 868 (3/11/2016), 873-75 (3/10/2016), 882-83 (2/10/2016). In August 2015, Dr. Vyas advised Plaintiff to use a cane for walking. AR 885. In the November 4, 2015 treatment record, Dr. Vyas notes Plaintiff's neck pain and left hemiparesis (weakness). AR 887. In light of the record evidence as a whole, this reason for discounting Dr. Vyas' opinion is not supported by substantial evidence of record.

Plaintiff further argues that, even if there were a sound basis for not giving Dr. Vyas' opinion controlling weight, the ALJ did not assess the opinion in light of the regulatory factors, which include the examining relationship, the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, the physician's specialization, and other factors brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Although the ALJ identified Dr. Vyas as a neurologist in the context of the medical records and discussed certain treatment records by Dr. Vyas, there is no indication that the ALJ considered those regulatory factors in weighing Dr. Vyas' opinion. *See Scrogham v. Colvin*, 765 F.3d 685, 697-

98 (7th Cir. 2014) ("The ALJ should have addressed these factors in her opinion to enable us to review whether she engaged in the correct methodology."). The ALJ also failed to discuss the consistency and supportability of the October 2014 and February 2015 consultative examinations by state agency physicians with Dr. Vyas' opinion. *See Gerstner v. Berryhill*, 879 F.3d 257, 262-63 (7th Cir. 2018) (finding that the ALJ failed to properly consider consistency of the treating opinion with the opinions of other treating, examining, and reviewing medical sources). Both consultative examiners found ataxic gait, motor deficits, left upper extremity strength deficits, and reduced grip strength bilaterally with dynamometer testing. AR 760-61, 628. Although the ALJ reviewed these records in the chronological summary of Plaintiff's medical history, the ALJ did not discuss consistency and supportability of these records in weighing Dr. Vyas' opinion.

In addition, treatment records from other providers pre-dating Dr. Vyas' opinion are consistent with Plaintiff's complaints. For example, Dr. Bernstein documented numbness and tingling. AR 552-53 (2/25/2014), 559 (3/11/2014), 568 (4/10/2014). Dr. Bayer noted that a cervical spinal cord lesion could be contributing to Plaintiff's upper extremity symptom exacerbation. AR 457 (7/11/2014), 467 (7/14/2014). Physical therapy notes showed decreased left upper extremity and grip strength, abnormal posture, decreased mobility, impaired motor control, and pain affecting function. AR 735 (10/14/2014), 742 (1/23/2015). And, on August 3, 2015, Dr. Shah opined that Plaintiff's midline low back pain was likely due to Plaintiff's obesity. AR 798. Dr. Vyas opined that Plaintiff would need a sit-stand option, yet the ALJ did not discuss whether that limitation was consistent with the medical records. The failure to consider all the regulatory factors, especially

11

supportability and consistency, is not harmless error, as suggested by the Commissioner in a footnote.

The ALJ did not create a logical bridge in weighing Dr. Vyas' treating opinion, and the weight given to Dr. Vyas' opinion is not supported by substantial evidence. Remand is required on this basis.

### C. Subjective Symptoms

Finally, Plaintiff argues that the ALJ applied an incorrect legal standard in assessing Plaintiff's subjective symptoms. The ALJ found that Plaintiff's symptoms "are *not entirely consistent* with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 24 (emphasis added). Plaintiff asserts that "not entirely consistent" is not the legal standard; rather, the ALJ "must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record." (citing 20 C.F.R. § 404.953(a); *Minger v. Berryhill*, 307 F. Supp. 3d 865, 871 (N.D. Ill. 2018)). However, under SSR 16-3p, the ALJ must "evaluate whether the statement are *consistent* with objective medical evidence and the other evidence." 2016 WL 1119029, at *8; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a). Therefore, the use of the boilerplate phrase "not entirely consistent" is not, alone, a basis for remand. *See Robert v. Berryhill*, 2:17-CV-2107, 2018 WL 4565385, at *7-8 (C.D. Ill. Sept. 24, 2018); *see also Parker v. Astrue*, 597 F.3d 920 (7th Cir. 2010).

Plaintiff further argues that the ALJ failed to explain which of Plaintiff's symptoms were not entirely consistent with the evidence. This is not accurate. In the decision, the ALJ identified several

12

specific complaints and then identified the lack of an evidentiary basis in the record for the complaint. AR 27. The ALJ wrote:

> Further limitations are not supported. The claimant claimed an ability to sit for only one hour, but there is no evidence of this in the record. She testified that physical therapy for balance was not effective, yet the record states otherwise. She stated that she naps every day for 4-6 hours, which is not noted in the record. Nor are [there] complaints of extreme fatigue. The claimant testifie[d] that she still drives a vehicle. She alleged migraines, but the record only infrequently documents headaches. She also only takes acetaminophen for headaches. She complained of memory issues, but memory testing consistently was normal. She was instructed to exercise, yet she testified she does not exercise. Her application alleges issues with vision, but she did not see a specialist. There is no support for her allegations about slurred speech.

AR 27-28.

Nevertheless, as noted above in Part A, the ALJ did not properly consider Plaintiff's complaints of fatigue in making this statement. And, as argued by Plaintiff in her opening memorandum, the ALJ did not discuss Plaintiff's complaint of hand limitations based on routinely dropping things, which is supported by objective findings of reduced grip strength and motor deficits. *See* AR 628, 760-61. On remand, the ALJ will have an opportunity to properly assess Plaintiff's fatigue and her complaints regarding grip strength and motor deficits. *See* SSR 16-3p, 2016 WL 1119029, at *8 ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions.").

**IV.     Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Memorandum in Support of Reversing the Decision of the Commissioner of Social Security [DE 15] **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 14th day of February, 2019.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record